UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LIBERATA RAZON RIBLEZA,

                Plaintiff,

    v.

NANCY BERRYHILL, Deputy Commissioner of Social Security Operations,

                Defendant.

Case No. 2:17-cv-01392-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Liberata Razon Ribleza has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court affirms the Commissioner's decision denying benefits.

I. BACKGROUND

Ms. Ribleza filed an application for a period of disability and disability insurance benefits on September 19, 2014. Dkt. 8, Administrative Record (AR) 15. She alleged in her application that she became disabled beginning January 1, 2012.[1] *Id.* Her application was denied on initial administrative review and on reconsideration. *Id.* A hearing was held before an administrative

---

[1] SSDI benefits are based on earnings, and the benefits are limited to the period of insurance. 42 U.S.C. §§ 401(b), 423(c)(1), (d)(1)(A). The legal criteria for deciding whether a disability exists is the same under both SSDI and Supplemental Security Income (SSI). *Diedrich v. Berryhill*, 874 F.3d 634, 637 (9th Cir. 2017).

ORDER - 1

law judge (ALJ) on April 14, 2016. AR 29-56. Ms. Ribleza and a vocational expert appeared and testified.

The ALJ found that Ms. Ribleza could perform jobs that exist in significant numbers in the national economy, and therefore that she was not disabled. AR 15-24 (ALJ decision dated May 27, 2016). The Appeals Council denied Ms. Ribleza's request for review on August 9, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Ms. Ribleza appealed that decision in a complaint filed with this Court on September 20, 2017. Dkt. 4; 20 C.F.R. § 404.981.

Ms. Ribleza seeks reversal of the ALJ's decision and remand for further administrative proceedings, arguing that the ALJ misapplied the law and lacked substantial evidence for her decision. Ms. Ribleza contends that the ALJ erred at steps two and five of the five-step criteria. The alleged errors concern the ALJ's reasons for finding plantar fasciitis not to be a severe impairment and for discounting Ms. Ribleza's statements about the severity of various symptoms. For the reasons set forth below, the Court concludes that the ALJ properly applied the law at step two and step five of the disability analysis and substantial evidence supports her decision concerning Ms. Ribleza's testimony about severity of symptoms. Consequently, the Court affirms the decision to deny benefits.

## II. STANDARD OF REVIEW AND SCOPE OF REVIEW

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id.*

ORDER - 2

The five steps are a set of criteria by which the ALJ considers: (1) Does the claimant presently work in substantial gainful activity? (2) Is the claimant's impairment (or combination of impairments) severe? (3) Does the claimant's impairment (or combination) equal or meet an impairment that is listed in the regulations? (4) Does the claimant have RFC, and if so, does this RFC show that the complainant would be able to perform relevant work that he or she has done in the past? And (5) if the claimant cannot perform previous work, are there significant numbers of jobs that exist in the national economy that the complainant nevertheless would be able to perform in the future? *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724-25 (9th Cir. 2011).

At issue here is the ALJ's step two determination about which of Ms. Ribleza's impairments qualify as "severe," the ALJ's consideration of Ms. Ribleza's statements in assessing her residual functional capacity (RFC), and the ALJ's step five finding that Ms. Ribleza can perform jobs existing in significant numbers in the national economy.

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id*.

ORDER - 3

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

### III. THE ALJ'S STEP TWO DETERMINATION

At step two of the sequential evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520. In this case, the ALJ determined that Ms. Ribleza had four severe impairments: asthma, fibromyalgia, diabetes, and trigger finger. AR 17. In her step two analysis, the ALJ considered Ms. Ribleza's treatment for plantar fasciitis but found that "[w]ith only two complaints of heel pain and the recommendation of conservative treatment," the record did not indicate that plantar fasciitis had more than a minimal effect on Ms. Ribleza's ability to work. AR 18. Ms. Ribleza contends that the ALJ erred in failing to find her plantar fasciitis to also be a severe impairment at step two.

An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85-28, 1985 WL 56856, at *3. An impairment is not severe if the evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856, at *3; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

The step two inquiry is a *de minimis* screening device used to dispose of groundless

ORDER - 4

claims. *Smolen*, 80 F.3d at 1290. The Ninth Circuit recently emphasized that this inquiry "is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (rejecting claim that ALJ erred after second hearing, where ALJ found new severe impairments but did not change RFC). The court noted that an ALJ assessing a claimant's RFC before steps four and five "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck*, 869 F.3d at 1049 (citing Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). Thus, the RFC "should be exactly the same regardless of whether certain impairments are considered 'severe' or not" at step two. *Buck*, 869 F.3d at 1049.

The Ninth Circuit concluded, in the case before it, that because the ALJ decided step two in the claimant's favor and was required to consider all impairments in the RFC, whether "severe" or not, "[a]ny alleged error is therefore harmless and cannot be the basis for a remand." *Buck*, 869 F.3d at 1049 (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

The same is true here. Because the ALJ decided step two in Ms. Ribleza's favor, the ALJ was required to consider evidence of any and all impairments, severe or not, in assessing Ms. Ribleza's RFC. *See Buck*, 869 F.3d at 1049. The ALJ's discussion indicates that she did consider Ms. Ribleza's complaints of pain and its effects in assessing her RFC. AR 20-22.

## IV. THE ALJ'S CONSIDERATION OF MS. RIBLEZA'S TESTIMONY

Ms. Ribleza contends next that the ALJ erred in discounting her testimony about several conditions. The Court disagrees.

The ALJ found Ms. Ribleza's testimony on the severity of her symptoms "not entirely consistent with the medical evidence and other evidence in the record." AR 21. Based on this

ORDER - 5

determination, along with her rejection of the lay testimony of Ms. Ribleza's daughter (discussed below) and her evaluation of the sole medical opinion (which Ms. Ribleza does not challenge), the ALJ found that Ms. Ribleza has the residual functional capacity

> **to perform light work as defined in 20 CFR 404.1567(b) with the following limitations. Specifically, she can lift/carry up to 20 pounds occasionally and 10 pounds frequently. She can sit for about six hours and stand/walk about 6 hours in an 8-hour day with regular breaks. She has an unlimited ability to push/pull within those exertional limits. She can occasionally climb ramps/stairs. She can never climb ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. Claimant can occasionally handle bilaterally.**

AR 19 (emphasis in original).

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess[ ]" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See Allen*, 749 F.2d at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as substantial evidence supports that determination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective description of symptoms, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d. 821, 834 (9th Cir. 1995) (citation omitted). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.3d at 834.

Here, Ms. Ribleza testified that she had to sell her grocery store because of her health. AR 35-36. She stated that she has trouble sleeping due to pain, and that lack of sleep makes her

ORDER - 6

unable to focus or to work physically. AR 36, 38. She stated that her fingers becomes "stuck[,] especially in the morning," and that she sometimes drops things as a result. AR 38. She testified that she is able to move her fingers after doing exercises but they hurt throughout the day. AR 39-40. She stated that she must perform certain activities slowly, like dressing and doing the dishes. AR 40.

Ms. Ribleza also testified that she has pain in other parts of her body, including in her lower back and heels. AR 38, 41. She stated that her legs are numb at times. AR 38, 41.

Ms. Ribleza testified that she can only stand or walk comfortably for one or two hours per day because she becomes tired and numb. AR 46. She also testified that plantar fasciitis causes pain in her heels when she walks. AR 46. And she stated that she would need frequent rests during an eight-hour workday. AR 47.

Ms. Ribleza also testified that she is impaired from working by her need to use the bathroom frequently, "a dozen times a day and at night," due to medication. AR 44.

Ms. Ribleza also testified that she was attending Zumba fitness classes in 2014, as her medical records indicate, but that her condition "deteriorated" in 2015 and 2016; she did not state whether she continued to do Zumba or other exercise. AR 45.

The ALJ partially discounted Ms. Ribleza's testimony about the severity of her symptoms and their limiting effects. She found that treatment records showed that Ms. Ribleza could exercise frequently and for substantial periods, and that this "is significantly more activity than [Ms. Ribleza] alleged at [the] hearing and is compatible with a 'light' exertional level." AR 21. The ALJ also pointed to exam findings showing full motor strength, intact sensation, and normal gait and a treadmill test that indicated her exercise capacity was "fair." The ALJ

ORDER - 7

concluded that these records were inconsistent with Ms. Ribleza's testimony about the limiting effects of pain and fatigue. AR 21.

Next, the ALJ found that Ms. Ribleza's medical records did not support her testimony that her impairments interfere with sleep. AR 21. She pointed out that Ms. Ribleza instead reported that she would stay up late cleaning the house. AR 21.

With respect to Ms. Ribleza's testimony about her fingers, the ALJ found that treatment records indicated that Ms. Ribleza received "some relief" from medication, had refused steroid injections, and that her provider had recommended exercises as treatment. The ALJ also found that the record did not include complaints that Ms. Ribleza dropped items, had limited functioning in her hands, or had other ongoing complaints about her "upper extremities." AR 21.

These were clear and convincing reasons to reject Ms. Ribleza's hearing testimony, and the record contains substantial evidence supporting them.

An ALJ may rely on a claimant's daily activities to support an adverse credibility finding when those activities contradict the claimant's subjective complaints or are transferable to a work setting and the claimant spends a "substantial part of her day" on them. *Smolen*, 80 F.3d at 1284 & n.7; *see Orn*, 495 F.3d at 639; *Trevizo*, 871 F.3d at 682. "[D]isability claimants should not be penalized for attempting to lead normal lives," and they do not need to show they are "utterly incapacitated in order to be disabled." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Revels v. Berryhill,* 874 F.3d 648, 667 (9th Cir. 2017).

The ALJ gave clear and convincing reasons to discount Ms. Ribleza's testimony about the limiting effects of pain and fatigue. Whereas Ms. Ribleza testified that she could stand and walk for only one or two hours per day because of fatigue and numbness, AR 46, the ALJ pointed to records throughout the alleged disability period that show Ms. Ribleza exercising

ORDER - 8

often: In October 2012 she was going to Zumba "every day." AR 332. In April 2013 she was "very active" in those classes despite getting short of breath and needing an inhaler. AR 322. In April 2014 she was exercising at Zumba and on a treadmill as much as two hours per day "for five days" (per week, presumably). AR 306.

She continued to "exercise every day" in January and May 2015. AR 553, 592. The ALJ could reasonably infer from Ms. Ribleza's ability to exercise for long periods that she did not suffer the severe limiting effects of pain and fatigue that she testified to. *See Sample*, 694 F.2d at 642. The ALJ's finding that Ms. Ribleza's treatment records are inconsistent with her testimony of disabling fatigue is thus supported. The record likewise supports the ALJ's finding that on testing Ms. Ribleza had full motor strength in her upper and lower extremities. AR 593, 621.

The records that Ms. Ribleza contends show disabling limitations instead show only ambiguities about her capabilities. Ms. Ribleza contends that she had an increasingly difficult time exercising: She notes that even when she was going to Zumba class every day, she was getting dizzy, tired, and short of breath. *See* AR 322, 332. At the hearing, she testified that she attended Zumba classes but stayed in back of class because she needed to take breaks. AR 45.

She said that her abilities "deteriorated" in 2015 and 2016. AR 45. But although Ms. Ribleza states in her reply brief that she "lost the ability to attend Zumba classes," the record shows she testified that she still exercised although her ability deteriorated. Dkt. 12, p. 3; AR 45. Ms. Ribleza further cites treatment notes from July and September 2015. Dkt. 12, p. 3. Rather than supporting Ms. Ribleza's contention that she lost the ability to exercise, however, the notes show that doctors continued to recommend exercise as treatment for her conditions. AR 523 ("Diet/exercises reinforced" as part of plan for treating effects of diabetes), 538 (noting "joint paints, asthma and diabetes[ ] affect her functioning and day to day activities," and that Ms.

ORDER - 9

Ribleza "will increase exercise"). Ms. Ribleza also cites a treadmill test in which her provider wrote, "[s]he did not reach target [heartrate] due to fatigue." AR 475. Her provider noted that she was having a bad day and very fatigued, possibly related to fibromyalgia, and concluded she showed "Fair exercise capacity." AR 475. The parties dispute whether "Fair" exercise capacity supports or contradicts the ALJ's conclusion; however, the Court must uphold the ALJ's credibility determination where evidence is ambiguous. *Allen*, 749 F.2d at 579.

The records cited by Ms. Ribleza do not imply that she cannot complete a workday at the light or sedentary level of exertion. Although the record suggests that Ms. Ribleza's asthma and blood pressure problems inhibited her ability to exercise at times, AR 322, 332 (2012 and 2013 records), it also shows that Ms. Ribleza's providers have continued to advise that she exercise regularly and that she has done so. *E.g.* AR 465, 523, 530, 563. Apart from the ambiguous results of the treadmill test, the evidence relied on by Ms. Ribleza consists of her self-reports of pain and fatigue. Dkt. 10, pp. 4-6. Ms. Ribleza's providers submitted no opinions about those symptoms' limiting effects.

The ALJ indicated that she credited and accounted for some of Ms. Ribleza's testimony about her pain and fatigue. She gave "great weight" to the sole medical opinion on Ms. Ribleza's capabilities. AR 22. The ALJ found that Dr. Pong's opinion that Ms. Ribleza can perform at a "light" exertional level "adequately accommodates claimant's impairments including her asthma, fatigue, and pain." AR 22. While the treatment record might support a different finding than the one the ALJ reached, the Court cannot say on this record that the ALJ's conclusions were unreasonable or unsupported by substantial evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995). The ALJ reasonably interpreted Ms. Ribleza's medical records to be consistent with employment at a "light" exertion level. See *Rollins v. Massanari*, 261 F.3d 853,

ORDER - 10

857 (9th Cir. 2001) ("It is true that Rollins' testimony was somewhat equivocal about how regularly she was able to keep up with all of these activities, and the ALJ's interpretation of her testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it.").

The ALJ also gave a clear and convincing reason to reject Ms. Ribleza's testimony about poor sleep. In February 2016, Ms. Ribleza's provider noted she has a "history of insomnia" and "cleans usually until she goes to bed at night, gets up and does it all over again." AR 692. In September 2015, her provider noted she "[a]dmits to poor sleep hygiene because [she] stays up at night cleaning the house." AR 493.

On the other hand, when her asthma was "acting up" in January 2015 she reported "Poor sleep due to wheezing." AR 609. She also attributed problems sleeping to asthma in her October 2014 function report. AR 238. But Ms. Ribleza does not cite any reports in the record that pain kept her up at night, as she testified at the hearing, and the record does not appear to contain any. AR 38. Substantial evidence thus supports the ALJ's finding that the record was inconsistent with that testimony. *See Allen*, 749 F.2d at 579.

The record also supports the ALJ's findings with respect to Ms. Ribleza's testimony about her impairments in using her fingers and hands. Ms. Ribleza testified that exercises are effective at unstiffening her fingers. AR 38-40. Ms. Ribleza's testimony also supports the ALJ's finding that medication gives her "some relief" in her fingers, though she stated that pain persists all day. AR 21, 40. The medical records also support the ALJ's findings that Ms. Ribleza refused steroid injections for her finger, providers otherwise prescribed modest treatment (exercises and over the counter pain medicines), and Ms. Ribleza has not previously complained of dropping items or other handling problems. *See* AR 306, 308, 417, 563, 568, 593, 596. When assessing a

ORDER - 11

claimant's credibility, an ALJ may properly rely on "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284). When Ms. Ribleza was taking the steroid prednisone, she experienced "some relief" and was able to function. AR 561, 619, 692.

In giving "great weight" to Dr. Pong's opinion, the ALJ credited the only medical opinion on Ms. Ribleza's fingering and handling limitations. AR 22. Dr. Pong found that Ms. Ribleza could only occasionally handle with either hand. AR 74. The ALJ accounted for that limitation in the RFC. AR 19. The Court does not need to determine whether, if it considered this evidence for the first time, it would find that Ms. Ribleza's handling is more limited than this. The ALJ's reasons for discounting Ms. Ribleza's testimony, to the extent she did so, were clear and convincing and find support from substantial evidence in the record.

Where evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Although Ms. Ribleza argues for a different interpretation of the medical record in this case, the ALJ's interpretation was rational. The inconsistency that the ALJ found between the medical record and Ms. Ribleza's testimony in turn provided a clear and convincing reason to discount that testimony to the extent it alleged debilitating mental symptoms. *See Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998).

### V. THE ALJ'S CONSIDERATION OF LAY WITNESS TESTIMONY

Next, Ms. Ribleza challenges the ALJ's decision to discount testimony by Ms. Ribleza's daughter, Jolene Avila.

ORDER - 12

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ may also "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

Ms. Avila submitted a third-party function report in October 2014. AR 209-16. She wrote that her mother was "always tired" and could not sleep. AR 209. She wrote that Ms. Ribleza would cough and lose her breath because of asthma, and that asthma affects her sleep and makes her lose her breath when she walks fast. AR 209-10, 214. She wrote that Ms. Ribleza would need a bathroom "almost every half hour." AR 209.

Ms. Avila stated that Ms. Ribleza used to be very active. AR 210. She marked that Ms. Ribleza could still perform all of her personal care, but "sometimes very slow." AR 210. She wrote that Ms. Ribleza prepared meals about twice a week and it takes her an hour, and that Ms. Ribleza still cleans the house, washes dishes, and dusts. AR 211. She wrote that Ms. Ribleza goes outside mostly on the weekends and maybe once on weekdays, and that she shops for groceries at least twice per week, taking a couple of hours. AR 211. Ms. Avila wrote that Ms. Ribleza could walk "maybe 10-15 minutes" before needing to rest for 5-10 minutes. AR 214.

The ALJ discounted Ms. Avila's testimony, finding that her "statements generally reiterate claimant's own allegations" with respect to fatigue, sleep, loss of breath, and sweating and shaking. The ALJ repeated her conclusion that "the treatment history does not reflect many

ORDER - 13

of these allegations" and so found that "Ms. Avila's statements are not generally consistent with the objective medical evidence." AR 22.

An ALJ may reject the testimony of a lay witness when the ALJ has properly rejected the claimant's testimony and the lay witness's testimony is similar to the claimant's subjective complaints. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). The record supports the ALJ's conclusion that Ms. Avila's testimony about Ms. Ribleza's functioning was substantially similar to Ms. Ribleza's own. AR 38-42, 209-11, 213-14. Accordingly, the ALJ gave a germane reason for discounting Ms. Avila's testimony and the record supports that reason.

## VI. THE ALJ'S CONSIDERATION OF ASTHMA LIMITATIONS

Ms. Ribleza asserts that the ALJ further erred in failing to account for her asthma in the RFC. As noted above, the ALJ limited Ms. Ribleza to light work and found that she can stand or walk for about six hour per day with regular breaks. Ms. Ribleza contends that the record demonstrates that she cannot do so because asthma would cause her to lose her breath.

As Ms. Ribleza notes, her medical records contain complaints of wheezing, shortness of breath, and flare-ups from environmental factors, diagnoses of asthma, and prescribed treatment including inhalers and steroids at times. AR 322, 538, 553-54, 592, 609. However, the record also shows Ms. Ribleza's asthma symptoms were controlled with that treatment. AR 322, 553-54, 593.

More importantly, the record contains no evidence that Ms. Ribleza's asthma limits her ability to perform work functions. In the absence of such evidence, this Court cannot say that the ALJ's RFC lacked substantial evidence for the standing and walking limitations in the RFC. *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) (rejecting challenge to ALJ consideration of obesity in RFC where record contained "no evidence . . . of any functional limitations as a result of . .

ORDER - 14

. obesity that the ALJ failed to consider"); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) (noting that RFC need "only include those limitations supported by substantial evidence").

Because the ALJ found that Ms. Ribleza could also perform sedentary work existing in significant numbers in the national economy, any error in finding that Ms. Ribleza can perform the standing and walking required in light work would be harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error is harmless if it was "inconsequential to the ultimate nondisability determination"); *Powell v. Comm'r of Soc. Sec.*, 318 F. App'x 550, 551 (9th Cir. 2009) (error in determining claimant could perform light work was harmless where ALJ found claimant could perform past work at sedentary level).

## VII. THE ALJ'S STEP-FIVE DETERMINATION

Finally, Ms. Ribleza contends that the ALJ erred in finding at step five that she can perform other jobs in the national economy.

At step five of the sequential disability evaluation process, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to perform. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1520(e). The ALJ can do this through testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2000). An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422-23 (9th Cir. 1988).

Ms. Ribleza contends, first, that because the RFC is incorrect in stating that she can perform light work, the ALJ erred in finding she could perform the "light" job of hotel clerk. This challenge fails because, as discussed above, the ALJ did not err in arriving at an RFC.

Ms. Ribleza also contends that the ALJ erred in relying on the expert's testimony because the Dictionary of Occupational Titles code for "solicitor" that the ALJ cited (based on the vocational expert's testimony) does not actually correspond to such a job. See AR 24, 53; *see also* DOT 301.677-010, 1991 WL 672652 ("Child monitor").

At the hearing, the vocational expert testified that someone with Ms. Ribleza's RFC could perform the job of "Telephone solicitor, 301.677-010, again occasional on the reaching and handling, and that's sedentary, semiskilled, 3, with . . . an estimated 234,000 jobs nationally, 5,600 within Washington State." AR 53. The ALJ asked the vocational expert which skills from Ms. Ribleza's previous work were transferable to that job, and the expert replied: "Well, using the telephone, selling, which this was a retail store, and did all of the duties including cashiering and talking to—customer service, so in and of itself that becomes transferable." AR 53-54.

Where the RFC contains all of the limitations that the ALJ found credible and supported by substantial evidence, the ALJ may generally rely on a vocational expert's testimony based on that RFC. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between" the expert's testimony and information in the Dictionary of Occupational Titles (DOT) and explain how any conflict that was resolved. SSR 00–4p, available at 2000 WL 1898704, at *1

ORDER - 16

Other than the code number the vocational expert cited, Ms. Ribleza does not identify any conflict between the duties of telephone solicitor and the abilities reflected in the RFC.[2] *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015) (holding ALJ erred in failing to recognize "the apparent conflict between [the claimant's] RFC and the demands of Level Two reasoning" as defined in DOT); *Fowler v. Berryhill*, No. 3:16-CV-1520-SI, 2018 WL 566217, at *7 (D. Or. Jan. 26, 2018) (holding ALJ erred in failing to recognize and identify conflict between RFC limiting claimant to quiet environments and telephone solicitor job involving moderate noise). Accordingly, any error that the ALJ committed by relying on testimony that cites the incorrect DOT code number was harmless.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined Ms. Ribleza to be not disabled. The Commissioner's decision to deny benefits is therefore AFFIRMED.

DATED this 29th day of August, 2018.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

---

[2] The Court takes judicial notice of DOT 299.357-014, "Telephone Solicitor," which includes requirements that correspond with the vocational expert's testimony. *See* 20 C.F.R. § 416.966(d) (SSA "take[s] administrative notice of reliable job information available from . . . Dictionary of Occupational Titles . . .").

ORDER - 17